NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY R. SHANUS, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:11-cv-2839 (DMC)(MF) |
| ROBERT EDWARD AUCTIONS, LLC and ROBERT LIFSON, | |
| Defendants. | |

**DENNIS M. CAVANAUGH, U.S.D.J.**

      This matter comes before the Court upon the Motion filed by Defendants Robert Edward Auctions, LLC ("REA") and Robert Lifson ("Lifson") (collectively, "Defendants") to Dismiss the First Amended Complaint of Plaintiff Corey R. Shanus ("Plaintiff"). ECF No. 23. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **denied**.

I.     **BACKGROUND**[1]

      This case involves an action for fraud and breach of contract brought by Plaintiff, a collector of sports memorabilia, against Lifson and his auction house, REA. Amended Complaint ("AC"),

---

[1] The facts in this section are taken from the Amended Complaint, which for the purposes of this Motion, are assumed to be true.

ECF No. 16. The Amended Complaint focuses on an alleged deliberate scheme by Defendants to conceal their knowledge that many of the items they obtained from an individual and held for auction were counterfeit, and on Defendants' affirmative misrepresentations regarding the authenticity of those items.

Plaintiff is a resident of Westchester County, New York, and is a "world renowned collector of sports collectibles." AC ¶ 1. REA, an auction house specializing in the on-line advertising, auctioning, and sale of sports collectibles, is a New Jersey corporation with its principal place of business in Watchung, New Jersey. AC ¶ 2. Lifson is a New Jersey resident and was, at all relevant times, the Owner and Managing Member of REA. AC ¶ 3. Plaintiff states that the claims alleged in the Amended Complaint "arise from the transaction of business by defendants in, inter alia, this District, including the 'on-line' advertising, auctioning, promotion and sale of goods in New Jersey." AC ¶ 7.

Plaintiff alleges, on information and belief, that prior to his time at REA, Lifson was an officer and employee of the prominent auction house Mastro Net, Inc. ("Mastro Net"). AC ¶¶ 8-9. During that time, Lifson arranged to obtain by consignment a large collection of sports memorabilia from an individual named Peter Nash ("Nash"), which supposedly consisted of rare nineteenth and twentieth century sports collectibles (the "Nash Items"). AC ¶ 10.

At a Mastro Net auction in August of 2002, Plaintiff successfully bid on an item known as the "1861 Grand Match Trophy Baseball" (the "1861 Trophy Ball"), which, upon Plaintiff's information and belief, was one of the Nash Items. AC ¶ 12. Plaintiff placed his bid on the 1861 Trophy Ball based, at least in part, on representations and warranties made by Mastro Net, Lifson, and others regarding the item's authenticity. AC ¶¶ 13-17. In September of 2002, Plaintiff paid

Mastro Net $60,861.00 for the 1861 Trophy Ball.  AC ¶ 18.

In April 2003, Plaintiff again successfully bid on a Mastro Net item.  AC ¶ 19.  This time, Plaintiff acquired the "1853 New York Knickerbocker Trophy Ball" (the "1853 Trophy Ball") which, again upon Plaintiff's information and belief, was one of the Nash Items.  AC ¶¶ 19, 21.  As with the 1861 Trophy Ball, Plaintiff placed his bid on the 1853 Trophy Ball based on the representations and warranties made by Mastro Net, Lifson, and others regarding the item's authenticity.  AC ¶¶ 22-24. Plaintiff paid Mastro Net $161,992.45 for the 1853 Trophy Ball in June of 2003.  AC ¶ 26.

Plaintiff complains that, despite the representations made by Lifson and others, Defendants had information calling into question the authenticity of 1861 Trophy Ball and the 1853 Trophy Ball (collectively, the "Trophy Balls"), and hid that information from Plaintiff.  In response, Defendants raise a statute of limitations defense, the nature of which requires a close examination of the time and extent of both Defendants' and Plaintiff's knowledge concerning the authenticity of the Trophy Balls, as well as the time and extent of Defendants' representations to Plaintiff about the Trophy Balls.

Plaintiff states that Defendants had information calling the Trophy Balls' authenticity into question as early as 2003.  AC ¶ 27.  Plaintiff generally states that in 2003 and 2004 "Lifson was advised by a leading authenticator of baseball memorabilia that serious questions existed" regarding the Nash Items.  AC ¶¶ 31-32.  Plaintiff specifically points to concerns Lifson had about three Nash Items: the "Origins of Baseball Letter" which sold at an auction in 2004 but was never paid for, the "Fashion Course Trophy Ball" which sold at an auction in 2005 and also was never paid for, and the "1833 Olympic Baseball" which Lifson caused to be removed from an auction in 2006 due to forgery concerns.  AC ¶¶ 29, 30, 43.  Plaintiff also discusses how Steve Grad, a Principal Authenticator for

Professional Sports Authenticator, examined a number of Nash Items between 2003 and 2006, and informed Lifson that many of these items were forgeries. AC ¶¶ 48-58.

Plaintiff's own concerns regarding the authenticity of certain Nash Items began to develop as early as 2003. At that time, Plaintiff was considering whether to bid on an 1869 trophy casing, offered for auction by Mastro Net, which contained a number of trophy balls purportedly from the 1869 Cincinnati Red Stocking baseball team (the "Trophy Casing"). AC ¶ 33. In connection with this prospective bid, Plaintiff retained a furniture expert to examine the Trophy Casing. AC ¶ 34. This furniture expert concluded that certain components of the Trophy Casing were modern enhancements, which called the Trophy Casing's authenticity into question. AC ¶ 34. Based on this disclosure, Plaintiff "began to wonder" whether the Trophy Balls he had previously acquired were not authentic. AC ¶ 34.

Multiple events in 2009 further convinced Plaintiff that certain Nash Items, including the Trophy Balls he purchased, might be forgeries. Defendants invited Plaintiff to bid in an auction in February of 2009 (the "February 2009 Auction"), but Plaintiff's suspicions were aroused by a disclaimer in the auction terms which stated that the collection of baseball materials at the auction were to be sold "AS IS and with all faults," and that some of the items "may be authentic in part." AC ¶¶ 79-80. Plaintiff states that he had never seen such a disclaimer at an auction before, and indicates that he was suspicious concerning the authenticity of the items sold. AC ¶ 81. Following this auction, in July of 2009, Plaintiff was advised by an FBI agent investigating Mastro Net that, as early as 2003, Lifson and other individuals at Mastro Net knew or had reason to believe that the 1853 Trophy Ball was not authentic. AC ¶ 28.

According to the Amended Complaint, while Plaintiff's concerns about the authenticity of

the Trophy Balls developed, Defendants continued to affirmatively mislead him regarding their own knowledge of the Trophy Balls' origins. Between 2003 and April 2005, Plaintiff and Lifson had multiple conversations about the Nash Items, during which Lifson did not disclose any concerns about the items, and repeatedly assured Plaintiff as to their authenticity. AC ¶ 35. On or around April 27, 2005, Plaintiff specifically raised his concerns with Lifson concerning the Trophy Casing, and brought up the possibility of scientifically testing the Trophy Balls. AC ¶ 36. In response, Lifson assured Plaintiff that the Trophy Casing was genuine, as were all other Nash Items that had been sold by Mastro Net. AC ¶ 37. Plaintiff states that in an effort to dissuade him from further inquiring as to the authenticity of these items, Lifson showed him a letter purportedly written by Henry Chadwick (the "Chadwick Letter") which discussed the Trophy Balls and attested to their authenticity. AC ¶ 38. Plaintiff states, however, on information and belief, that in 2006 Lifson was informed that the Chadwick Letter was a forgery, but did not disclose this fact to Plaintiff. AC ¶ 54.

Plaintiff further recounts several more similar interactions with Lifson between May 2005 and February 2009. AC ¶ 40. In December of 2005, Plaintiff purchased a silver trophy ball from REA (the "Silver Trophy Ball"), which Lifson advised Plaintiff was previously owned by Nash. AC ¶ 41. In connection with this purchase, Plaintiff again raised concerns regarding authenticity of the Nash Items with Lifson, and was again reassured that there was no need to question their genuineness. AC ¶ 42. Plaintiff also contacted Lifson regarding his concerns with the terms of the February 2009 Auction. AC ¶ 82. During this conversation, for the first time, Lifson advised Plaintiff that there were authenticity concerns with some of the Nash Items, and suggested that Plaintiff should consider having the Trophy Balls tested for authenticity. AC ¶ 82. Plaintiff then contacted Orion Analytical, LLC ("Orion") to investigate the authenticity of the Trophy Balls. AC

¶ 83.  Orion concluded on August 13, 2009 that the 1853 Trophy Ball was a fraud, and concluded on October 27, 2009 that the 1861 Trophy Ball was a fraud.  AC ¶¶ 84-85.

The Amended Complaint suggests that Defendants had "good reason" to hide their knowledge regarding the authenticity of the Nash Items, including the Trophy Balls.  AC ¶ 44.  Plaintiff states, on information and belief, that Lifson had loaned a substantial sum of money to Nash (the "Nash Loan") and collateralized that loan by taking a security interest in Nash's collection of sports memorabilia.  AC ¶ 44.  Lifson had apparently been unsuccessful in his efforts to obtain repayment, and viewed the collateral as perhaps his only source of repayment for the Nash Loan.  AC ¶ 44.  Plaintiff therefore states that even though Lifson knew there were concerns regarding the Nash Items' authenticity, he continued to promote and sell those items at REA and through private channels.  AC ¶ 45.

In addition to the allegations related to the Trophy Balls and the Nash Items, Plaintiff also makes several allegations regarding an alleged market price inflation scheme perpetrated by Defendants.  Plaintiff asserts that Defendants accomplished this scheme by "falsely reporting record sales of rare baseball memorabilia."  AC ¶ 86.  Plaintiff provides two specific examples in this regard.  First, in 2004, REA reported that it sold an "Origins of Baseball Letter" for $310,500, despite estimates that the item would sell for between $40,000 and $60,000.  AC ¶ 87.  Second, in 2005, REA reported that it sold a "Fashion Course Trophy Ball" for $498,000, approximately three times the previous record for any trophy ball.  AC ¶ 88.  In connection with this latter sale, Lifson was quoted in an article stating that "Price guide values were redefined by the auction . . . There's going to be a lot of price guide revisions due to the results of this auction."  AC ¶ 88.  Plaintiff states, on information and belief, that Defendants made these statements knowing they were false, and in

fact retained the items purportedly sold and offered them as part of the qualified sale of Nash Collectibles conducted in 2009.  AC ¶¶ 89-90.  The Amended Complaint goes on to state that Plaintiff successfully bid on at least five items with REA, and that the prices he paid for these items were improperly inflated due to Defendants' scheme.  AC ¶¶ 94-95.

Plaintiff filed his original Complaint on April 4, 2011, in the Southern District of New York. ECF No. 1.  The parties stipulated to transfer venue to this Court on May 10, 2011.  ECF No. 8. Defendants filed a Motion to Dismiss the Complaint on May 19, 2011, and in response, Plaintiff filed the Amended Complaint on June 8, 2011.  ECF No. 12.  The Amended Complaint sets forth three causes of action.  First, Plaintiff alleges a cause of action for "lulling fraud" against Lifson, arguing that Lifson's allegedly false statements concerning the Trophy Balls were intended to induce Plaintiff to "forego exercising his rights with respect to the Trophy Balls."  AC ¶¶ 96-106.  The Second Count alleges a cause of action for fraud against both Defendants, arguing that he was harmed by Defendants' alleged market price inflation scheme.  AC ¶¶ 107-16.  Finally, Plaintiff alleges a cause of action for breach of contract against REA.  AC ¶¶ 117-23.  In this last Count, Plaintiff argues that REA's terms and conditions of sale provided, among other things, that if retained authenticators were not in agreement regarding an items authenticity, that item would not be offered for auction.  AC ¶ 118.  Plaintiff states that despite being advised by one an authenticator that the Nash Items were not authentic, REA offered those items for sale anyway, in violation of their own terms and conditions of sale.  AC ¶ 119.

Defendants filed the present Motion to Dismiss on August 15, 2011, arguing that the first cause of action should be dismissed as barred under the applicable statute of limitations, that the entire Amended Complaint should be dismissed under FED. R. CIV. P. 9(b), and that the third cause

of action should be dismissed since REA expressly disclaimed any warranties. Plaintiff filed his Opposition Brief on September 19, 2011. ECF No. 28. On October 3, 2011, Defendants filed their Reply Brief. ECF No. 31. The matter is now before this Court.

## II.   LEGAL STANDARDS

A. FED. R. CIV. P. 12(b)(6)

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 550 U.S. at 555

B. FED. R. CIV. P. 9(b)

Fraud-based claims are subject to FED R. CIV. P. 9(b). Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (". . . claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A

plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

### III.   DISCUSSION

A.   Count One

i. Statute of Limitations

The Court's jurisdiction in this matter is predicated on diversity of the parties. AC ¶¶ 4, 5. In such a case, the Court "must determine whether, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 (1938), a matter is substantive or procedural." Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008) (citing Simmons v. City of Phila., 947 F.2d 1042, 1085 (3d Cir. 1991). Where the matter is substantive, a choice of law question is presented, and a choice of law analysis is required to determine which state's substantive law should apply. Id. As Defendants' Motion raises a statute of limitations defense, that matter is considered substantive for Erie purposes, and the Court must conduct a choice of law analysis. See Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 160-61 (3d Cir. 2001) ("Statutes of limitations are substantive for Erie purposes.") (citing Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)).

Generally, the Court must apply the forum state's choice of law principles. Id. When an action is transferred from one district to another under 28 U.S.C. § 1404(a), however, the transferee

court applies the laws of the forum in which the action was originally filed. See Van Dusen v. Barrack, 376 U.S. 612, 637-39 (1964) ("A change in venue under § 1404(a) generally should be, with respect to state law, but a change in courtrooms.")  In this instance, the parties stipulated to transfer of the case to this District from the Southern District of New York, "for the convenience of the parties and witnesses," pursuant to 28 U.S.C. § 1404. ECF No. 8. Therefore, this Court will apply New York's choice of law rules.

"New York courts treat statutes of limitations as part of the forum's procedure, and therefore apply New York statutes of limitations even if the underlying claim ultimately will be governed by the substantive law of another jurisdiction." Architectronics, Inc. v. Control Sys., Inc., 935 F.Supp. 425, 431 (S.D.N.Y. 1996) (citing Sun Oil Co. v. Wortman, 486 U.S. 717, 722-29 (1988)). Under New York law, causes of action for fraud are subject to two alternative statute of limitations periods, that is, the greater of either six years from the commission of the fraud, or two years from the time when the fraud was actually discovered or with due and reasonable diligence could have been discovered. N.Y. C.P.L.R. 203(g), 213.

Defendants assert that any fraud occurred, if at all, at the time Plaintiff purchased and paid for the Trophy Balls in 2002 and 2003. Defs.' Mot. Br. 22. In their Motion Brief, Defendants go on to assert that Plaintiff failed to file his Complaint within six years of that sale, or within two years of the date Plaintiff discovered any fraud. Plaintiff notes, however, that his cause of action in this case is not based on the sale of those Trophy Balls by Mastro Net. Pl.'s Opp'n Br. 12-13. Rather, Plaintiff asserts that Defendants' statements caused him not to pursue any cause of action for breach of contract against Mastro Net, and that because of Defendants' statements, he did not even know that any such cause of action would have existed until after the relevant statute of limitations period

had passed. Pl.'s Opp'n Br. 13. Plaintiff thus states, with regards to Count One, that "[i]t is the loss of the right to pursue a claim regarding the Trophy Balls, and not any fraud in connection with the purchase of the Trophy Balls which is the basis for this claim." Pl.'s Opp'n Br. 13.

In response, Defendants assert that if Plaintiff was informed that the Trophy Balls were forgeries in August of 2009, the underlying cause of action against Mastro Net would have been "still within the two (2) year extension feature of the New York statute (even though the initial six (6) year periods had expired) and had ample time to commence litigation and assert his claims against Mastro Net." Defs.' Reply Br. 1-2. The problem with this argument, however, is that Plaintiff asserts that his underlying cause of action against Mastro Net was for breach of contract, not fraud. N.Y. C.P.L.R. 213 does not provide for a two year discovery extension in breach of contract cases. If August of 2009 is the date Plaintiff was informed that the Trophy Balls were forgeries, the cause of action against Mastro Net would have been barred by the applicable statute of limitations.[2] Accordingly, Defendants' statute of limitations argument regarding Count One fails.

ii. Rule 9(b)

Defendants additionally argue that Count One should be dismissed under the pleading standards of FED. R. CIV. P. 9(b). Defendants argue that Plaintiff has not pled the "who, what, when and details of the alleged fraud." Defs.' Mot. Br. 26 (citing District 119P Health and Welfare Plan v. Janssen, L.P., No. 10-2021, 2011 WL 1086004 at *13 (D.N.J. March 21, 2011). While it is true

---

[2]The precise question of when Plaintiff actually discovered the fraud is a mixed question of law and fact, and need not be resolved on this Motion to Dismiss. Mosley v. City of Pittsburgh Pub. School Dist., No. 07-1560, 2008 WL 2224888 at *7 n.10 (W.D.Pa. May 27, 2008); Del Vecchio By Del Vecchio v. Nassau County, 118 A.D.2d 615, 617 (N.Y. App. Div. 1986).

that Plaintiff must plead or allege the date, time and place of the alleged fraud, he need not go so far as to plead the "date, place or time of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b)." Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC, 417 F.Supp.2d 632, 644 (D.N.J. 2006) (emphasis added). Such a narrow approach "fails to take account of the general simplicity and flexibility contemplated by the Federal Rules of Civil Procedure." Id. (citing Christidis v. First Penn. Mtg. Trust, 717 F.2d 96, 100 (3d Cir.1983)) (internal citations and quotation marks omitted). Instead, FED. R. CIV. P. 9(b) "merely requires that 'circumstances' of the alleged fraud be pled with enough specificity to 'place defendants on notice of the precise misconduct with which they are charged.'" Id. (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984)). Plaintiff is permitted to satisfy FED. R. CIV. P. 9(b) by pleading the date, place, and time of each alleged fraudulent act, but he may also do so by "us[ing] alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." Id. (citing Seville Indus. Mach. Corp., 742 F.2d at 791).

      Defendants specifically argue that Plaintiff made a significant number of critical allegations "on information and belief," without sufficiently setting forth the underlying factual basis for those allegations. Defs.' Mot. Br. 26-33; Defs.' Reply Br. 2-4. In support of this argument, Defendants note that courts ordinarily "cannot accept such serious allegations of fraud based solely on the 'information and belief' of the plaintiff alone without any elaboration as to the basis of that belief." Defs.' Mot. Br. 27 (citing Shulton, Inc. v. Optel Corp., No. 85–2925, 1986 WL 15617 at *16 (D.N.J. Sept. 29, 1986)) (Defendants' emphasis). Defendants state that when viewed "through the prism of these demanding pleading standards," Plaintiff's fraud allegations do not satisfy FED. R. CIV. P. 9(b). Defs.' Mot. Br. 30. To this end, Defendants provide several examples of the Amended

Complaint's supposed deficiencies, including that Plaintiff only "generically describes" the conversations he had with Lifson in 2002 and 2003 in connection with the original sale of the Trophy Balls, that Plaintiff's descriptions of his discussions with Lifson between 2003 and 2005 are similarly flawed, and that Plaintiff provides no factual basis to support his allegations as to Lifson's purported knowledge. Defs.' Mot. Br. 30-33.

The Court finds that the Amended Complaint presents sufficient allegations to give Defendants notice of the precise misconduct with which they are charged. The Amended Complaint specifically identifies statements made by Defendants to Plaintiff regarding the Trophy Balls' authenticity throughout 2005. AC ¶¶ 35-42. While Defendants take issue with the fact that the Amended Complaint alleges "on information and belief" the specific date on which Defendants acquired information calling the authenticity of the Nash Items into question, this is not fatal to Plaintiff's case. Defs.' Mot. Br. 31. Plaintiff has injected sufficient factual allegations to make his theory plausible. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) ("even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice . . . Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.") (internal citations omitted). For example, Plaintiff specifically identified a pair of Nash Items that were purchased at auctions in 2004 and 2005 but were never paid for, and has identified a letter that Lifson caused to be removed from an auction in 2006 due to forgery concerns. AC ¶¶ 29, 30, 43. Plaintiff also details interactions between Steve Grad and Lifson in 2003 and 2006, during which time Grad informed Lifson of forgery concerns with the Nash Items. AC ¶¶ 48-58. While not all speakers or conversations mentioned in the Amended Complaint are specifically identified, Plaintiff has provided sufficient specificity throughout the entirety of the

Amended Complaint to satisfy FED. R. CIV. P. 9(b). See, e.g., Kam Intern. v. Franco Mfg. Co. Inc., No. 10-2733, 2010 WL 5392871 at *3 (D.N.J. Dec. 22, 2010) (finding complaint pled with "sufficient specificity to alert Defendant of the precise misconduct with which it has been charged," despite argument that allegations were pled on information and belief and that not all speakers or dates were identified). Finally, the Court notes that Plaintiff's allegation concerns a pattern of fraud taking place over an extended period of time. In such a case, the Court is mindful that "too strict an application of the particularity requirement" should be guarded against. Shulton, Inc., 1986 WL 15617 at *15-16 (citing Thomas v. Tramiel, 105 F.R.D. 568, 572 (E.D. Pa. 1985)). Accordingly, the Court finds that Plaintiff's allegations put Defendants on notice of the precise misconduct with which they are charged. Defendants' Motion to Dismiss Count One of the Amended Complaint is therefore denied.

B.    Count Two

Defendants attack Plaintiff's market manipulation theory on similar grounds, arguing that Count Two of the Amended Complaint should be dismissed for lack of a factual basis to support the "information and belief" pleadings. Defs.' Mot. Br. 35. To this end, Defendants argue "[i]f it turns out (as REA will prove if need be) that REA did enforce the winning bids . . . Plaintiff's 'market manipulation theory' collapses under its own ponderous weight." Defs.' Mot. Br. 35. Similarly, Defendants argue that market value at REA auctions are not fixed by "what those reporting on what has taken place in a prior auction have said," but rather, the prices are set by what individual buyers were "ready, willing and able to pay for a particular item under constantly changing market conditions." Defs.' Mot. Br. 36.

Both of Defendants' arguments regarding Count Two fail for the same reason: they are arguments of disputed fact, not properly resolved on a motion to dismiss. Rather, for purposes of this Motion, these disputes are resolved in favor of Plaintiff. Further, to the extent that Defendants attack Count Two of the Amended Complaint for failure to satisfy pleading standards, the Court finds Count Two sufficiently pled to overcome any such concerns. Accordingly, Defendants' Motion to Dismiss Count Two of the Amended Complaint is denied.

C. Count Three

Finally, Defendants move to Dismiss Plaintiff's breach of contract claim, arguing that the terms and conditions upon which Plaintiff relies expressly disclaim any liability, and that Count Three suffers from the same pleading defects as Counts One and Two. Defs.' Mot. Br. 36-37. With respect to the first argument, Plaintiff correctly notes that although REA "may not have warranted the authenticity of the items sold . . . they did specifically represent that they would not sell an item where the 'authenticators were not in unanimous agreement regarding authenticity.'" Pl.'s Opp'n Br. 24. As Plaintiff's cause of action is based on REA's sale of items despite a lack of authenticator unanimity, and not based on authenticator correctness, any disclaimer of warranty as to the authenticity of an item is irrelevant. For this reason, Defendants' first argument fails.

Defendants' second argument attacks the underlying factual basis of Count Three. Count Three relies, in part, on the allegations that Steve Grad reviewed three Nash Items and informed REA that those items were not authentic. Defendants argue that these allegations "are all defective for the same kinds of pleading deficiencies previously discussed." Defs.' Mot. Br. 36 n.21. The Court does not agree. While some of the allegations necessary to this Count are pled "on

information and belief," the pleading standards set forth in Iqbal and Twombly do not suggest that such pleading is necessarily deficient. Pollock v. Energy Corp. of America, No. 10-1553, 2011 WL 3667289 at *3 (W.D.Pa. June 27, 2011) (citing Brinkmeier v. Graco Children's Prod. Inc., No. 09–262, 2011 WL 772894 at * 6 (D.Del. March 7, 2011)). The Court is satisfied that Plaintiff has sufficiently detailed his claim for breach of contract, so as to demonstrate that REA is charged with possessing conflicting authentication statements regarding certain items, and that REA held those items out for sale anyway, despite express terms and conditions of auction. Defendants' Motion to Dismiss Count Three is therefore denied.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion is **denied**. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh  
        Dennis M. Cavanaugh, U.S.D.J.

Date:       March   26  , 2012  
Orig.:      Clerk  
cc:         All Counsel of Record  
            Hon. Mark Falk, U.S.M.J.  
            File